IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CAROLINA FUENTES TENORIO, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:10-CV-263 |
| | § | |
| RICK THALER, | § | |
| Director, Texas Dep't of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

### REPORT AND RECOMMENDATION
### TO DENY PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner CAROLINA FUENTES TENORIO has filed a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging her conviction out of the 222nd District Court of Deaf Smith County, Texas, for the offense of theft and the resultant ten-year sentence. For the reasons hereinafter expressed, the United States Magistrate Judge is of the opinion petitioner's application for federal habeas corpus relief should be DENIED.

I.
FACTUAL AND PROCEDURAL BACKGROUND

The evidence at trial showed that, on November 23, 2007, petitioner and two female accomplices entered a Wal-Mart store in Hereford, Texas. Video surveillance indicated the three ladies shopped around the store, collecting some clothing and electronic items. (*State v. Tenorio*, CR-07L-205, 222nd Judicial District Court, Reporter's Record of January 6, 2009 and January 23, 2009 Bench Trial [hereinafter RR], vol. 2, pg. 70). The three woman then went into the infant's department of the store. (*Id.*, pgs. 70-71). Wal-Mart's security surveillance system was not set up to directly

record the aisle in the infant's section where petitioner and her accomplices went, but the footage shows the three women going down the aisle with a shopping cart containing items from the electronics department (including LCD televisions) and from the clothing department, and emerging from that aisle some time later with only an opened infant's car seat box but no clothing or electronics visible in the cart. (*Id.*, pgs. 71, 99-100). The three then went into the little girls and domestics sections of the store. Again, there was no video surveillance of the specific aisle where the three women went. (*Id.*, pgs. 73-74). There was, however, footage showing the three women, one pushing the basket with the car seat box in it and the other two pushing another basket with merchandise in it, going down the same aisle together. (*Id.*, pg. 74). They emerged from the aisle some time later with only one basket, containing the car seat box, which was closed instead of open, and no additional merchandise. (*Id.*, pg. 75). One of petitioner's accomplices (Graciela Garcia) took the car seat box to the checkout stand, where she paid for the car seat purportedly in the box. (*Id.*, pg. 77). As Garcia was pushing the cart through the exit, petitioner walked directly in front of the cart with a DVD. (*Id.*, pg. 78). When the security sensors at the door alerted, petitioner approached the Wal-Mart associate at the door and presented the associate with the DVD and a receipt for the DVD, i.e. petitioner used the DVD as a decoy to explain why the sensors were alerting to the stolen items hidden in the car seat box. (*Id.*). Video surveillance indicated petitioner and Garcia went to their car in the parking lot, put the car seat box into the trunk of the car, moved the car closer to the front of the parking lot, and went back into the store where they met with their other accomplice. (*Id.*, pg. 80).

During this second trip in the store, petitioner and her two accomplices followed a pattern similar to the one successfully employed during the first trip. During this second trip, however, a Wal-Mart associate observed the women removing an infant's car seat from its box and alerted the store's asset protection department. (*Id.*, pg. 45). Maggie Maldonado, an asset protection associate for Wal-

Mart, surreptitiously approached the three ladies and began discretely observing them. (*Id.*, pg. 47). As Ms. Maldonado watched, petitioner and her two accomplices selected a variety of items from around the store and placed them into the car seat box. (*Id.*, pgs. 47-49). After the ladies had finished packing the box, Ms. Maldonado observed petitioner re-taping the box with packing tape. (*Id.*, pgs. 49, 96). At that point in time, Ms. Maldonado realized the three women were in fact pushing two shopping carts, one with the car seat box and another with a "plastic-looking buggy kind of box." (*Id.*, pgs. 49, 108). Petitioner was pushing the cart with the car seat box, and one of her accomplices (Maria Lavrio) was pushing the cart with the other box. (*Id.*, pg. 49). Ms. Maldonado testified about the women's actions at that point:

> Q. So once you observed the box being secured with tape, where did the three ladies go at that point?
>
> A. They went across -- from men's, they went across, cut through lingerie. From the lingerie, they split. On that one action alley, they split up, and I was on the phone with the manager again and letting him know that Maria had went towards jewelry, towards the check-outs, and that Graciela and Carolina [petitioner] had cut off towards stationery.
>
> Q. So did Maria make it to one of the cash registers?
>
> A. Yes, Maria made it to register 15.
>
> Q. And what happened at register 15?
>
> A. She paid for her box, which we already had alerted the cashier and management to go ahead and let her pay, not to touch the box.
>
> Q. So while Maria was gone to register 15, where did the Defendant and Graciela go?
>
> A. They -- they were both in stationery, and they cut around stationery, went by jewelry, but Graciela was pushing the basket then. They -- when they cut around there, they were waiting by jewelry.
> As soon as Maria moves up to pay for the box, they moved closer to the entranceway, and they waited there. When she finished paying, they met up together and started exiting.
> . . .

> Q. So did they meet up near the exit?
>
> A. Yes, they met up right at the -- they met right at the entrance door, right before the sensors.
>
> Q. What happened at that point?
>
> A. And they all three walked -- and they could barely fit. They all three walked through the sensors, and when the sensors went off, that's when Carolina stepped back and showed her DVD.
>
> Q. Okay. What did the other two ladies do when the Defendant stopped?
>
> A. They kept going, except we already had supervisors and managers out there where they were stopping them.

(*Id.*, pgs. 49-52). At that point, all three women were detained until the police arrived and arrested them. (*Id.*, pgs. 52, 55). Wal-Mart associates scanned all of the items hidden in the car seat box and in the buggy box. (*Id.*, pgs. 108-110). The total, pre-tax value of the items from the two boxes was $1,719.82. (*Id.*, pg. 110).

The next morning, Wal-Mart associates discovered the car belonging to the three women in the parking lot. (*Id.*, pg. 58). Ms. Maldonado, who was called in to handle the car, called the police. (*Id.*). A police officer arrived and made an inventory of the items in the car. (*Id.*, pg. 34). At that point, the car seat box full of stolen merchandise from the women's first, successful trip through the store was discovered. (*Id.*, pg. 35). Wal-Mart associates determined the pre-tax total value of the stolen items in that car seat box was $1,316.52. (*Id.*, pgs. 115-116, State's Ex. 4).

Petitioner was indicted for theft of property valued at $1,500.00 or more but less than $20,000.00. (*State v. Tenorio*, CR-07L-205, 222nd Judicial District Court, Clerk's Record [hereinafter CR], pg. 1). Petitioner waived jury trial and proceeded to bench trial, at which she was found guilty

and sentenced to serve ten years' incarceration.[1] (*Id.*, pg. 52). The conviction was affirmed on direct appeal, and the petition for discretionary review was denied. *See Tenorio v. State*, 299 S.W.3d 461 (Tex. App.—Amarillo 2009, pet. ref'd). Petitioner did not file a state habeas corpus application but opted to file only this pending federal habeas corpus petition.

II.
PETITIONER'S GROUND OF ERROR

In her sole ground of error, petitioner contends she is in custody in violation of the United States Constitution and the laws of the United States because the evidence was legally insufficient to prove theft of $1,500.00 or more but less then $20,000.00

III.
STANDARD OF REVIEW

The standards of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) apply to this case. Consequently, petitioner may not obtain relief in this Court with respect to any claim adjudicated on the merits in the state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). All factual determinations made by a state court are presumed to be correct and such presumption can only be rebutted by clear and convincing evidence. *Id.* § 2254(e).

---

[1] Theft of property worth $1,500.00 or more but less than $20,000.00 is a state jail felony unless the defendant has two prior final conviction for state jail felonies, in which case the defendant should be punished for a third-degree felony. Tex. Pen. Code § 12.42(a)(1), 31.03(e)(4)(A).

IV.
## THE MERITS OF PETITIONER'S CONTENTION

*A. Exhaustion*

Federal habeas corpus relief in § 2254 actions will not be granted unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b). To have exhausted state remedies, a habeas petitioner must have fairly presented to the highest state court the substance of each federal constitutional claim. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir.1997), cert. denied, 523 U.S. 1139 (1998).

In the State of Texas, the Court of Criminal Appeals is the highest court with jurisdiction to review a petitioner's confinement. Claims may be presented to that court through an application for a writ of habeas corpus or on direct appeal by a petition for discretionary review. Tex. Code Crim. Proc. Ann. art. 11.01 et seq (Vernon 2005). While a petitioner need not file both a state application for habeas corpus relief and a petition for discretionary review to exhaust any claims for federal habeas review, claims raised for the first time in a petition for discretionary review are not exhausted for federal habeas corpus purposes if the petitioner did not also file a state petition for habeas corpus relief, which included the claim. *Castille v. Peoples*, 489 U.S. 346, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989).

In this case, petitioner did file with the Court of Criminal Appeals a petition for discretionary review of the direct appeal, but she did not file a state habeas corpus application. The result of those actions on the instant proceedings is that any claim petitioner presented on direct appeal and challenged in her petition for discretionary review is exhausted, but any claim not presented on direct appeal or presented for the first and only time in her petition for discretionary review is unexhausted. *See id.* at 351, 109 S.Ct. at 1059.

The main ground for habeas relief petitioner presents to this Court is her claim that the evidence was legally insufficient to support petitioner's theft conviction. That ground is exhausted because it was presented to the state court on direct appeal and was again presented in the petition for discretionary review. Petitioner also raises an additional ground, however, which is that the state appellate court's interpretation and application of the Texas Penal Code unconstitutionally shifted the burden of proving an element of the offense to petitioner, in violation of the Due Process Clause. Specifically, petitioner contends,

> [The state court] held that under the applicable statute Ms. Tenorio was properly required to prove not only that she gave consideration – which the prosecution proved as part of its case-in-chief – but also that she bore the burden to prove that the amount of consideration made the total theft $1500 or less . . . In short, the state courts unreasonably applied Supreme Court precedent to uphold the petitioner's conviction, making Federal habeas corpus relief appropriate.

(Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254, filed Oct. 18, 2010, doc. 1, pg. 9).

Since this argument attacks the opinion of the intermediate state appellate court, it was impossible for petitioner to have presented this argument at any point prior to filing the petition for discretionary review. Consequently, at the state level, this argument was presented for the first *and only* time in the petition for discretionary review, i.e. it was never presented in a state habeas corpus application. Consequently, this issue is not exhausted for federal habeas corpus purposes. *See Castille*, 489 U.S. at 351, 109 S.Ct. at 1059; *Myers*, 919 F.2d at 1076.

Even if this issue was exhausted, petitioner points to nothing indicating the state court's interpretation is constitutionally infirm. It is within the state's province to determine who bears the burdens of producing evidence and the burdens of persuasion on each issue in a criminal case. *Patterson v. New York*, 432 U.S. 197, 201-02, 97 S.Ct. 2319, 2322, 53 L.Ed.2d 281 (1977). Of course, if the state shifts the burden of proof to the accused "by labeling as affirmative defense at least some elements of the crimes now defined in their statutes," then the state has acted in violation of the

Constitution.  *Id.* at 215, 97 S.Ct. at 2329.

There is no bright line approach to determine whether a particular fact is properly classified as an affirmative defense or an element of a crime.  *Woods v. Butler*, 847 F.2d 1163, 1166 (5th Cir. 1988).  Instead, the federal court must look to whether the state's actions are limited by considerations of reason and fairness.  *Id.*

> The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression.

*Morrison v. California*, 291 U.S. 82, 88-89, 54 S.Ct. 281, 284, 78 L.Ed.2d 664 (1934); *Woods*, 847 F.2d at 1166.

In this case, petitioner has failed to show the state court shifted a burden of proof in violation of the Due Process Clause.  To begin with, just as the state court reasoned on petitioner's direct appeal, the statutes involved do not clearly indicate the burden was ever on the State to show how much was paid to Wal-Mart.  To the contrary, the language of the statute indicates, "[i]f the *actor proves*" that he gave consideration for stolen property or services, then "the amount . . . so proven" shall be deducted from the value of the property.  Tex. Pen. Code Ann. § 31.08 (emphasis added); *Tenorio*, 299 S.W.3d at 462.  The state court interpreted this language to mean that the burden of proof was on petitioner to show not only that consideration was given, but also to show how much consideration was given to Wal-Mart.  This interpretation is akin to other affirmative defenses, such as alibi, self defense, or insanity, and does not offend considerations of reason and fairness.  Put another way, with this interpretation of the statute, the burden remained on the State to prove the elements of theft as defined by Texas law, but it also gave defendant the opportunity to repel what the State proved (the theft) with excuse or explanation (the consideration).  *Morrison*, 291 U.S. at 88-89, 54 S.Ct. at 284.  Petitioner

has not identified any authority recognizing a federal constitutional requirement that the government bears the burden of proof regarding the amount of consideration given during a theft, nor has this Court independently discovered such authority.[2] Petitioner has failed to demonstrate any due process violation. Petitioner has also failed to show the state appellate court's holding constituted an unreasonable application of clearly established federal law or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(defendant); *Morrison*, 291 U.S. at 88-89, 54 S.Ct. at 284, *Woods*, 847 F.2d at 1166. Even if this issue were exhausted, it is without merit.

### *B. Legal Sufficiency*

Petitioner did properly exhaust the issue of whether the evidence was legally sufficient to support the conviction. On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which reflects the federal constitutional due process standard. This standard requires only that the federal court determine, "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2789; *see Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002). "[T]o make this determination, a court must refer to the substantive elements of the criminal offense as defined by state law." *Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995).

Petitioner was convicted of theft of property valued at more than $1,500.00 but less than $20,000.00 under § 31.03 of the Texas Penal Code. A conviction under that statute requires proof

---

[2] In federal law, when determining the length of punishment in a theft case, the loss caused by the theft is reduced by any money given to the victim by the perpetrator before detection of the offense. U.S.S.G. § 2B1.1 cmt. n. 3(E)(i). Any error in calculation of the total loss or in application of the Sentencing Guidelines, however, is a procedural, not constitutional, in nature. *United States v. Klein*, 543 F.3d 206, 213 (5th Cir. 2008).

beyond a reasonable doubt that (1) a person; (2) unlawfully appropriated; (3) property; (4) with intent to deprive the owner of the property. Tex. Pen. Code Ann. § 31.03(a) (Vernon 2011). Any consideration a defendant gave during the course of the theft may be used to decrease the total amount of theft, which may be determined by subtracting the consideration from the fair market value of the stolen property. *Id.* § 31.08(a), (defendant) (establishing that if the actor proves by a preponderance of the evidence that he gave consideration for or had a legal interest in the property, the amount of consideration so proven shall be deducted from the value of the property").

Petitioner's ground of error attacks the determination of the total value of the stolen property. Evidence at trial indicated petitioner and two co-conspirators took an infant's car seat out of its box and filled the box with $1,316.52 of merchandise. (RR, vol. 2, pg. 110). A co-conspirator paid only for the car seat ostensibly in the box. (*Id.*, pg. 77). The two women then took the box full of stolen merchandise to their car in the parking lot and went back into the store to repeat their actions. The second time in the store, the women did the same thing with another infant's car seat box and an infant's buggy box. After filling these boxes with stolen merchandise, one of the co-conspirators paid only for the buggy that was supposed to be in the box. (*Id.*, pgs. 49-52). Petitioner and the other accomplice waited off to the side with the car seat box, which they did not pay for. (*Id.*). The three women were detained as they attempted to exit with the two boxes. Wal-Mart associates determined there was a total of $1,719.82 worth of goods in the car seat and buggy boxes, combined. (*Id.*, pg. 116, State's Exhibit 4).

Thus, evidence at trial established petitioner's co-conspirators did pay Wal-Mart some amount of consideration (money) for the stolen property, i.e. they paid the cost of the item that was supposed to be in the box (except for the second car seat box, which they apparently did not pay for). (*Id.*, pgs. 77, 49-52). Neither the State nor the defendant, however, offered evidence to establish how much

money the women paid to Wal-Mart during the course of the theft. Had that amount been properly established, it appears Texas law would have permitted the amount paid to Wal-Mart to be subtracted from the total value of the stolen merchandise in order to arrive at the overall amount of the theft. *See* Tex. Pen. Code Ann. § 31.08(defendant). Petitioner contends showing the amount of consideration paid was the State's responsibility. She avers that the State failed to establish theft between $1,500.00 and $20,000.00 when it failed to establish *both* the value of merchandise stolen *and* the consideration given to Wal-Mart during the course of the theft, both of which are necessary in a determination of the total theft.

On direct appeal, the state court found the evidence was legally sufficient to support the conviction for two reasons: (1) evidence indicated the women stole $3,036.34 of merchandise, so there was evidence of record supporting the conviction and (2) according to the state court's interpretation of the Texas Penal Code, "[*Tenorio*] was obligated to proffer evidence illustrating how much consideration she gave to the Walmart cashier, not the State as she contends." *Tenorio*, 299 S.W.3d at 463 (emphasis added).

In performing the *Jackson v. Virginia* legal sufficiency review, the Court must "refer to the substantive elements of the criminal offense as defined by state law." *See Weeks*, 55 F.3d at 1061. This Court is bound to defer to how state law defines the elements of the state offense. *See id.* It cannot question or make a determination based on reasoning outside the state-created boundaries. *See Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 604, 163 L.Ed.2d 407 (2005). Thus, when it comes to defining the elements of a state law, the state court's interpretation of the state statute is critical in federal habeas review. *See id.*, 546 U.S. at 76, 126 S.Ct. at 604 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Johnson v. Cain*, 215 F.3d 489,

494 (5th Cir.2000)(holding a federal habeas court may not review a state court's interpretation of its own law).

Petitioner's argument is that the State failed to prove an element of the crime of theft. The state court, in denying petitioner's appeal, defined the elements of theft. This Court is bound to follow that determination of the elements. *See Bradshaw*, 546 U.S. at 76, 126 S.Ct. at 604. Put another way, the state court determined the amount of consideration given during the course of a theft is not one of the elements the State must prove in order to establish the amount of the theft. Instead, the state court chose to treat proof of such consideration more as an affirmative defense, proof of which is borne by the defendant. *See Tenorio*, 299 S.W.3d at 463. This Court is bound by that interpretation of state law.

There was evidence, detailed above, that (1) petitioner, a person; (2) unlawfully appropriated; (3) property from Wal-Mart; (4) with intent to deprive Wal-Mart of the property. *See* Tex. Pen. Code Ann. § 31.03(a). There was evidence that the stolen property was valued at $3,036.34, an amount between $1,500.00 and $20,000.00 and in fact almost twice the minimum amount set forth in the statute. *See id.* § 31.03(e)(4)(A). Any rational trier of fact could have found the essential elements of the crime of theft beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Put another way, given the parameters of sections 31.03 and 31.08(d) of the Texas Penal Code, as interpreted by the state court, this Court cannot conclude the evidence was legally insufficient to support the theft conviction. *See id.*, 99 S.Ct. at 2789.

Even if this Court questioned whether the evidence was legally sufficient, petitioner has failed to show the analysis by the intermediate state appellate court involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Having failed to overcome the deference which must be given to state court decisions, petitioner's sole ground of error must be denied.

V.
## RECOMMENDATION

Petitioner has failed to present a claim warranting federal habeas corpus relief. Therefore, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner CAROLINA FUENTES TENORIO be DENIED.

VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 1st day of March, 2012.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).